**J. Loyd PARKER, Jr.,**
**Petitioner-Appellant,**

v.

**W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.**

**No. 76–4245.**

United States Court of Appeals, Fifth Circuit.

Aug. 29, 1977.

Will Gray, Houston, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Max P. Flusche, Jr., Asst. Atty. Gen., David M. Kendall, 1st. Asst. Atty. Gen., Joe B. Dibrell, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Petitioner, J. Loyd Parker, Jr., has been found guilty of murdering his father. In this habeas corpus action he seeks to liti-

gate for the second time the constitutionality of Texas' refusal to give him sentence credit for the time he spent in a mental hospital following the crime but before trial. A panel of this Court previously denied his claim, finding that the jury took his six year period of hospitalization into account when it sentenced him to a 10-year term for murder, which could have brought life imprisonment. *Parker v. Estelle*, 498 F.2d 625, 627 (5th Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). Because that factual finding was fully and fairly litigated in the prior proceeding, we affirm the district court's denial of his petition. 422 F.Supp. 35 (S.D.Tex. 1976).

Parker's father was found dead in 1963. When charged with the murder, Parker was held by a jury to be incompetent to stand trial. Committed to Rusk State Hospital until 1969, he was then determined to be sane and brought to trial. Parker alleges the incarceration in the hospital was unconstitutional under *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), which held that a state cannot institutionalize a person charged but not convicted of a crime unless the standards for civil commitment, which usually focus on dangerousness, are met. Parker says Texas never evaluated his dangerousness, so the incarceration discriminated against him because of his status as an accused criminal, and therefore was punishment. He asserts the double jeopardy and due process clauses require the state to take his prior unconstitutional incarceration into account when assessing his sentence upon conviction for the crime.

The prior panel of this Court noted that when a defendant receives less than the maximum sentence, the jury is presumed to have taken any prior incarceration into account in establishing the sentence. Applying such a presumption to this case was especially appropriate because

> [p]rospective jurors were informed on voir dire that he had spent six years at Rusk undergoing treatment while incompetent to be tried. At the punishment

hearing defense counsel specifically urged the jury to consider these six years in determining punishment, and the jury returned a sentence of only ten years for premeditated murder, an offense which carries a permissible punishment of imprisonment for any number of years or life. Moreover, the state habeas judge, who also conducted the trial and the punishment hearing, found "the jury was permitted to take into consideration the six years spent in Rusk by petitioner and the jury did take this into consideration and that was the reason for such minimum punishment of ten years in this case." In these circumstances, we reject Parker's bald assertion that he was denied credit for the time spent at Rusk and with it fall his related constitutional arguments.

498 F.2d at 627.

In this proceeding, Parker attacks that holding with affidavits from 11 of the 12 jurors in the state case, a few of which provide support for the theory that the jury did not, in fact, take prior confinement into account in sentence determination. The district court held, in *Parker v. Estelle*, 422 F.Supp. 35 (S.D.Tex.1976), that even if the affidavits were correct, this Court's decision in *Jackson v. Alabama*, 530 F.2d 1231 (5th Cir. 1976), would bar relief.

*Jackson v. Alabama* held a claim for sentence credit based on incarceration prior to trial did not rise to constitutional proportions unless the sentence received was the maximum that could be given. *But see Johnson v. Prast*, 548 F.2d 699 (7th Cir. 1977); *King v. Wyrick*, 516 F.2d 321 (8th Cir. 1975); *Ham v. North Carolina*, 471 F.2d 406 (4th Cir. 1973). Petitioner Parker would distinguish that case on the grounds that the confinement there was a legal exercise of the state's ability to require bail, while his prior confinement was allegedly illegal. It is not necessary for this Court to decide whether that distinction has merit. Parker's entire argument is premised on his assertion that the jury did not take his prior confinement into account in assessing his sentence. That issue was fully litigated in

a prior proceeding and determined against him.

■ At common law, the principle of *res judicata* did not apply to habeas corpus decisions. *Sanders v. United States*, 373 U.S. 1, 7, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); *Bearden v. United States*, 403 F.2d 782 (5th Cir. 1968), *cert. denied*, 393 U.S. 1111, 89 S.Ct. 920, 21 L.Ed.2d 808 (1969). In 1966, however, Congress sought to introduce a qualified form of that doctrine into federal review of state convictions by enacting 28 U.S.C.A. § 2244(b). Cerf, *The Federal Habeas Corpus Act and the Recent Amendments to the Act Limiting Its Use and Abuse by State Prisoners*, 22 U. of Miami L.Rev. 409, 420 (1967). The statute provides:

> When after an evidentiary hearing on the merits of a material factual issue . . . a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States . . . unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, . . .

In this case Parker received a full evidentiary hearing in state court, and those findings were adopted by both district and circuit courts in subsequent 28 U.S.C.A. § 2254 proceedings. In its response to the present § 2254 application, the state pled § 2244 as a bar to relitigation.

Parker responded that *Jackson v. Indiana, supra*, gave him a new ground for complaint. But any change in the law wrought by *Jackson v. Indiana* is irrelevant to the Government's § 2244 argument because the prior panel rested its decision not on an evaluation of the law but on the factual finding that the jury did take his hospitalization into account when sentencing him. Parker's attempt to introduce new evidence to attack that finding does not afford a new ground for relief. *See Sanders, supra* at 16, 83 S.Ct. 1068. *But see St. Pierre v. Helgemoe*, 545 F.2d 1306, 1308 (1st Cir. 1976). The finding was based on the results of an evidentiary hearing, and was not premised on a technicality of pleading. *See Sanders, supra* at 19–20, 83 S.Ct. 1068; *Villareal v. United States*, 461 F.2d 765, 767–768 (9th Cir. 1972).

■ Parker's counsel maintains that "fundamental fairness" precludes application of finality doctrine to this case. The "ends of justice" are to be considered in review of a habeas corpus petition. *Sanders, supra* at 16–17, 83 S.Ct. 1068; Williamson, *Federal Habeas Corpus: Limitations on Successive Applications From the State Prisoner*, 15 Wm. & Mary L.Rev. 265, 274 (1973). This approach to "justice," however, does not compel a decision for Parker in this case. First, of the 11 affidavits, only five contain affirmative statements that the affiants did not consider hospitalization time in sentencing Parker. The affidavits do not negate the probability that some of the jurors, at least, did in fact give credit to Parker for his mental confinement when it gave him but ten years for the murder of his father. Second, the jury was urged by Parker's attorney to consider the prior confinement in setting sentence, it knew about it, and one affidavit shows the jury considered what age Parker would be when released from jury sentence. Third, Parker has offered no reason to explain why his counsel did not procure the affidavits in time for the prior federal hearing, when witnesses' memories would have been fresher. *See United States v. Romano*, 516 F.2d 768, 771 (2d Cir.), *cert. denied*, 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975); *cf. Pope v. Huff*, 79 U.S.App.D.C. 18, 141 F.2d 727 (1944); Annot. 161 A.L.R. 1331, 1337 (1946) (explaining common law rule). Certainly the prior proceeding placed the adequacy of the state court finding directly in issue. Attempts to pierce the deliberative process of the jury with affidavits are disfavored in the law. *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 547

**316**

n. 43 (5th Cir. 1974). *Cf. O'Rear v. Frue-hauf Corp.*, 554 F.2d 1304, 1309–1310 (5th Cir. 1977) (no abuse of discretion to deny motion to interview jurors).

■ This same reasoning requires rejection of Parker's contention that the Constitution requires retroactive application of Tex.Code Crim.Proc.Ann. art. 46.02 (Vernon Supp. 1976), which now grants sentence credit to formerly institutionalized defendants. A final judgment that Parker received credit negates any benefit from retroactive application of the statute.

AFFIRMED.